UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARCO R. MERINO** | **CASE NO. 2:22-CR-14(1)**<br><br>**JUDGE EDMUND A. SARGUS, JR.**<br><br>Response of the United States in Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 |

The United States hereby submits its Response in Opposition to Defendant Marco R. Merino's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Motion, R.61.) Mr. Merino contends that his attorney was constitutionally ineffective because he did not object to a guideline enhancement related to the possession of a firearm and because he did not argue that the "safety valve" provision applied to Mr. Merino. Mr. Merino agreed in the Plea Agreement and in his guilty-plea hearing that the firearm enhancement applied. Here, the application of the firearm enhancement precluded safety-valve relief. Accordingly, the Motion should be denied.

## BACKGROUND

On September 28, 2021, Mr. Merino was arrested based on a Criminal Complaint alleging that, while serving as a police officer, he trafficked cocaine and fentanyl and accepted bribes to protect what he believed to be multi-kilogram shipments of cocaine. (Complaint, R.1.) On January 28, 2022, the United States Attorney filed an Information, which charged Mr. Merino with one count of Conspiracy to Distribute and to Possess With Intent to Distribute 400 Grams or More of Fentanyl; and one count of Federal Program Bribery. (Information, R.30.) His drug-conspiracy charge carried a 10-year mandatory minimum prison sentence. *See* 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(vi).

On the same day, the parties filed a Plea Agreement, in which Mr. Merino agreed to plead guilty to the two counts of the Information. (Plea Agreement, R.31 at 49.) The parties agreed to multiple guidelines stipulations, including that "the offense level should be increased by 2 levels because the Defendant possessed a firearm." (*Id.* at 51.) The Plea Agreement contained a Statement of Facts in which Mr. Merino admitted, in part, that he "possessed a firearm in furtherance of the protection of cocaine" and that he "revealed a concealed firearm to one of the FBI undercover agents." (*Id.* at 56.)

On February 8, 2022, Mr. Merino entered his guilty pleas and was adjudged guilty. (*See* Minute Entry, R.34.) In the guilty-plea hearing, Mr. Merino affirmed that the Plea Agreement contained a stipulation that the firearm enhancement applied and also affirmed that the Statement of Facts was correct. (Tr., R.58 at 229, 231.) On February 2, 2023, the Court sentenced him to 108 months in prison and 5 years of supervised release. Judgment was entered the same day. (Judgment, R.50.)

On February 15, 2024, Mr. Merino filed a Motion under 28 U.S.C. § 2255. (R.61.) On March 8, 2024, the Court ordered the United States to respond. (Order, R.63.)

**ARGUMENT**

Mr. Merino contends that his attorney was constitutionally ineffective because at sentencing the attorney did not object to the firearm enhancement under U.S.S.G. § 2D1.1(b)(1) and did not move for safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The contention lacks merit.

To establish ineffective assistance of counsel, Mr. Merino must show that his attorney performed deficiently and that he suffered prejudice from the inadequate representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). He cannot do either.

2

Mr. Merino's Motion touches on four intersecting provisions of law. *First*, U.S.S.G. § 2D1.1(b)(1) provides in drug cases that a defendant's offense level should be increased "[i]f a dangerous weapon (including a firearm) was possessed." *Second*, 18 U.S.C. § 3553(f) exempts defendants from mandatory minimum penalties if they were convicted of certain nonviolent drug crimes and if five criteria are met. *Third*, U.S.S.G. § 5C1.2 parallels § 3553(f) in defining the criteria for safety-valve relief. As relevant here, a defendant is eligible for safety-valve relief only if he "did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). *Fourth*, U.S.S.G. § 2D1.1(b)(18) provides in drug cases that a defendant's offense level should be decreased by two levels if the defendant is eligible for safety-valve relief.

In this case, the Final Presentence Investigation Report recommended a two-level increase to Mr. Merino's offense level on the ground that he possessed a firearm. PSR ¶¶ 43–44; *see* U.S.S.G. § 2D1.1(b)(1). Relatedly, because he possessed a firearm in connection with the offense, Mr. Merino was not eligible for safety-valve relief or the associated two-level reduction. *See* 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). Mr. Merino's counsel did not object on these grounds. At sentencing, the Court adopted the PSR's findings regarding Mr. Merino's possession of the firearm.

Mr. Merino's counsel was not constitutionally ineffective for failing to oppose the firearm enhancement, because Mr. Merino himself had agreed that the enhancement applied. The Plea Agreement contained a Statement of Facts that established a factual basis for Mr. Merino's convictions. (Plea Agreement, R.31 at 55–57.) The Statement of Facts described that Mr. Merino agreed to protect what he believed were "shipments of cocaine from the Dayton area to the Ohio-West Virginia border." (*Id.* at 56.) In fact, this was a ruse: "The individual who was transporting

the purported cocaine and the individual who accepted the purported cocaine were both FBI undercover agents." (*Id.*)

The firearm enhancement relates to Mr. Merino's acts on August 13, 2021. On that date, he accepted a $15,000 bribe payment "in exchange for protecting what he believed to be 20 kilograms of cocaine." (*Id.*) He followed the vehicle transporting the cocaine across Ohio to an area east of Wheeling, West Virginia. (*Id.*) In the words of the Statement of Facts, "Mr. Merino possessed a firearm in furtherance of the protection of cocaine, and prior to the payment Mr. Merino revealed a concealed firearm to one of the FBI undercover agents." (*Id.*) In signing the Statement of Facts, Mr. Merino agreed that he had read it and "carefully reviewed it" with counsel. (*Id.* at 57.) He also "acknowledge[d] that it is true and correct." (*Id.*)

The Plea Agreement also contained stipulations that certain sentencing guidelines did or did not apply. (*Id.* at 51–52.) As relevant here, the parties stipulated that "pursuant to U.S.S.G. § 2D1.1(b)(1), the offense level should be increased by 2 levels because the Defendant possessed a firearm." (*Id.* at 51.) By signing the Plea Agreement, Mr. Merino agreed that had read it, understood it, "voluntarily agree[d]" to it, and did "not wish to change any part of it." (*Id.* at 54.)

Mr. Merino also agreed that the firearm enhancement applied during his guilty-plea hearing. On February 8, 2022, Mr. Merino appeared before the Court to plead guilty. As part of the hearing, the Court asked the United States to summarize the terms of the Plea Agreement. (Tr., R.58 at 227.) During the summary, the Assistant U.S. Attorney explained that in the Plea Agreement, the parties had agreed that Mr. Merino's "offense level should be increased by two because the defendant possessed a firearm." (*Id.*) At the end of the summary, the Court asked, "Mr. Merino, is that also your understanding of your Plea Agreement?" (*Id.* at 229.) Mr. Merino replied, "Yes, Your Honor," and went on to say that no promises had been made to him that were

not in the Plea Agreement. (*Id.*) The Court also asked Mr. Merino about the Statement of Facts, which contained the admissions that Mr. Merino "possessed a firearm in furtherance of the protection of cocaine" and that he "revealed a concealed firearm to one of the FBI undercover agents." (*Id.* at 231 (*see* Plea Agreement, R.31 at 56).) Mr. Merino agreed that he had signed the Statement of Facts and that "all the facts" were "all exactly correct." (Tr., R.58 at 231.)

In light of his agreement in writing and in open court that he possessed a firearm in connection with his drug offense, Mr. Merino cannot establish that his attorney was ineffective. As the Sixth Circuit has held, "counsel cannot be deemed ineffective for failing to raise frivolous claims." *Norris v. Schotten*, 146 F.3d 314, 336 (6th Cir. 1998). That is because "[n]o prejudice results from failing to bring a defective claim." *Smith v. Warden*, No. 20-3472, 2022 WL 601860, at *3 (6th Cir. Mar. 1, 2022) (citing *United States v. Mahbub*, 818 F.3d 213, 231 (6th Cir. 2016); *United States v. Holder*, 657 F.3d 322, 332 (6th Cir. 2011); *United States v. Jones*, 489 F.3d 243, 255 (6th Cir. 2007)).

More particularly, a defendant "cannot establish that he was prejudiced by counsel's actions" regarding an enhancement when "he agreed to the enhancement in his plea agreement and in open court." *Scott v. United States*, No. 18-3447, 2018 WL 5879812, at *2 (6th Cir. Aug. 16, 2018); *see also Barker v. United States*, No. 23-1097, 2023 WL 9501137, at *3 (6th Cir. Dec. 4, 2023) ("Because Barker stipulated to his career-offender status, counsel was not ineffective for failing to challenge his career offender-sentence enhancement.").

Mr. Merino's argument also fails because it ignores what would have happened if trial counsel *had* objected to the firearm enhancement. Because such an argument would have been contrary to the parties' stipulations, it would have been a violation of the Plea Agreement. The Plea Agreement enumerates the serious consequences that could have followed. For one, the

5

U.S. Attorney's Office would have been relieved of all its obligations under the Plea Agreement and could have brought additional charges or sentencing recommendations. (*See* Plea Agreement, R.31 at 53.) As a practical matter, the United States would have been empowered to bring a charge under 18 U.S.C. § 924(c), which would have subjected Mr. Merino to additional mandatory minimum penalties. The United States also could have advocated that Mr. Merino should not receive a reduction for acceptance of responsibility, because he would have frivolously opposed an enhancement to which he had previously agreed. These and the other serious consequences of violating the Plea Agreement are another reason why counsel was not ineffective.

For his part, Mr. Merino does not acknowledge in his Motion that he stipulated to the firearm enhancement. He likewise does not explain how his counsel could be ineffective for failing to object to an enhancement that Mr. Merino agreed to in the Plea Agreement. Because counsel cannot be ineffective for failing to challenge an enhancement that a defendant stipulated to in writing and in open court, the Motion should be denied.

## CONCLUSION

For the above reasons, the Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 should be denied.

**Respectfully submitted,**

KENNETH L. PARKER
United States Attorney


s/ Peter K. Glenn-Applegate
PETER K. GLENN-APPLEGATE (0088708)
ELIZABETH A. GERAGHTY (0072275)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: peter.glenn-applegate@usdoj.gov
         elizabeth.geraghty@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing Response of the United States in Opposition to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 was served this 2nd day of May, 2024, electronically upon counsel for the Defendant.

                                                                   s/Peter K. Glenn-Applegate
                                                                   PETER K. GLENN-APPLEGATE (0088708)
                                                                   Assistant United States Attorney